## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYCE MCDONOUGH, | : | |
| | : | No. 3:19-cv-00823 |
| Plaintiff, | : | |
| | : | |
| v. | : | (JONES, J.) |
| | : | (SAPORITO, M.J.) |
| SCRANTON HOSPITAL | : | |
| COMPANY, d/b/a/ REGIONAL | : | |
| HOSPITAL of SCRANTON, | : | |
| | : | |
| Defendant. | : | |

## <u>MEMORANDUM</u>

This is an age and disability discrimination case which is before us on the plaintiff's motion to compel complete responses to discovery and extend case management deadlines. (Doc. 22).

## I.   *Statement of Facts*[1]

The plaintiff, Joyce McDonough, filed a complaint in the Court of Common Pleas of Lackawanna County, Pennsylvania, on April 10, 2019. Thereafter, on May 13, 2019, the defendant Scranton Hospital Company, LLC, d/b/a Regional Hospital of Scranton (the "Hospital"), removed the

---

[1] The facts as recited herein are taken from the plaintiff's complaint (Doc. 2) and the defendant's answer (Doc. 3).

action to this court. (Doc. 1). In her complaint, McDonough alleges age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and similar state law claims under the Pennsylvania Human Relations Act (PHRA) 43 P.S. § 951 *et seq.* Prior to filing her complaint, the plaintiff exhausted her administrative remedies before the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC").

In her complaint, McDonough alleges that she was hired as a staff registered nurse by the defendant's predecessor, Mercy Hospital, on October 13, 1978. During the course of her employment, McDonough progressed as a medical-surgical nurse, respiratory step-down nurse, ICU nurse, and finally an enterostomal therapy nurse where she alleges that her employment performance was consistently assessed as "above average" and "exceeding expectations." In December 1988, McDonough was diagnosed with and suffered from rheumatoid arthritis, which did not affect her ability to perform the essential duties and functions of her employment. In 1990, because of her education, training, and experience

as an enterostomal therapy nurse, Mercy Hospital's management tasked McDonough with the development of policies, procedures, protocols, and order sets addressing preventative care or treatment of skin integrity alteration in high risk patients including, but not limited to, ICU patients and orthopedic patients. In addition, McDonough also reviewed the charts of all patients at high risk for skin integrity alteration to assess overall compliance with skin care policies and to promptly identify patients in need of preventative skin care consultation or treatment. With the implementation of an electronic charting computer system, high risk patients could be immediately identified by the computer system and were automatically forwarded to McDonough in the form of a daily "census list."

In 2011, the defendant purchased and assumed operation of Mercy Hospital, and McDonough's employment, including all essential duties and functions of her position, continued without interruption or change. In November 2016, McDonough advised her supervisors of the advancement of her rheumatoid arthritis and thereafter began using a cane when walking about the hospital. She has alleged that, as a result of her rheumatoid arthritis diagnosis, she was disabled or perceived as

disabled. Her use of a cane did not affect her ability to perform the essential duties and functions of her employment position.

Nevertheless, on one occasion shortly after she began using a cane, a member of the defendant's management team advised her that she could not work with the cane. Despite McDonough's assurance that her use of the cane to walk across the defendant's hospital did not, in any way, interfere with her ability to perform the essential duties and functions of her employment position, the defendant instructed her that she was prohibited from using a cane while working unless she produced a note from her treating physician attesting that she was able to perform the essential duties and functions of her employment while using a cane to walk. Shortly thereafter, McDonough produced a requested physician's note and then continued to use her cane to walk through the hospital.

In an informal and undocumented meeting with her supervisors on April 10, 2017, McDonough was informed that her "hip and knee institute" patient charts were being reviewed and there was a question as to why she made documented notes in the charts of patients whom she did not physically see and examine. After providing a detailed explanation dating back to her job duties since 1990, McDonough's

supervisors questioned her whether McDonough's notes in the charts of patients whom she did not physically see and examine "made it look like" she had provided direct patient care and whether her explanation would "hold up in court." In response to those questions, McDonough explained that her documentation in patient charts was in conformity with the defendant's skin care protocols, that she had never—and would never— note that she had "seen and examined" a patient if she had not physically done so. At no time during the April 10, 2017, meeting, was McDonough ever instructed to change her procedure in clearing her "census list" or to stop making notes in the chart of any patient she had not physically seen or examined. In addition, McDonough was never instructed that her procedure was in violation of any of the defendant's policies, nor was she advised that the results of the April 10, 2017, meeting should be considered a "verbal warning."

On June 28, 2017, McDonough was called into a second meeting with the defendant's management and human resources team. During that meeting, McDonough was provided a disciplinary note stating that her employment was immediately terminated as a result of her continuing "falsification of documents" after having previously been

disciplined by verbal warning about the same type of infraction. As of the date of her termination, McDonough was one of the oldest employees in the wound care field and the only employee who used a cane to walk through the defendant's hospital.

On the basis of these allegations, on April 10, 2019, McDonough filed her four-count complaint for age discrimination and retaliation under the ADEA, disability discrimination under the ADA, age discrimination under the PHRA, and disability discrimination under the PHRA. (Doc. 2).

On May 20, 2019, the defendant filed its answer with affirmative defenses. (Doc. 3). In its answer, the defendant denied the allegations that it discriminated or retaliated against McDonough in any respect. Rather, in the spring 2017, the defendant's assistant chief nursing officer, Warren Shotto, directed McDonough to stop charting on patients whom she had not seen and had not been asked to consult upon. In addition, the defendant has alleged that it subsequently became aware that plaintiff charted on a patient on June 1, 2017, despite the patient's death more than a month earlier on March 29, 2017. An investigation into McDonough's charting practices followed and her employment was

terminated on June 28, 2017. Her job duties were assumed by a woman whom the defendant maintains is not "substantially younger" as a matter of law. Finally, the defendant asserts that neither McDonough's age nor her disability played a role in the termination decision.

Thereafter, a discovery dispute arose regarding answers to plaintiff's interrogatories and responses to plaintiff's requests for production of documents along with a request to extend case management deadlines. This discovery and scheduling matter was referred to the undersigned United States magistrate judge for resolution. (Doc. 23; Doc. 24). We conducted on-the-record telephonic conferences on April 9, 2020, and April 27, 2020. Throughout the course of those conferences and a preliminary conference which was held on April 1, 2020, counsel for the parties offered to resolve some of the disputed items, but others remain unresolved for our review and disposition.

## II.   *Legal Standards*

The federal courts have broad discretion to manage discovery, *Sempier v. Johnson & Higgins,* 45 F.3d 724, 734 (3d Cir. 1995), and the federal rules have long permitted broad and liberal discovery.

*Macy's,* 193 F.3d 766, 777 (3d Cir. 1999). Pursuant to Rule 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Further, the federal rules' relevancy requirement is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 350 (1978).

> Rule 26 establishes a liberal discovery policy. Discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information. Moreover, discovery need not be confined to items of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence.

*Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226 (M.D. Pa. 2014) (citations omitted). When the Court is presented with a motion to compel discovery,

> [t]he burden is on the objecting party to demonstrate in specific terms why a discovery request is improper. The party objecting to discovery must show that the requested materials do not fall within the broad scope of relevance or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh

the ordinary presumption in favor of broad disclosure.

*Id.* at 227 (citations, internal quotation marks, and alterations omitted).

## III.  Discussion

### a.  Motion to Compel

In her motion to compel, McDonough asserts seven categories of deficiencies: (1) the defendant's failure to state whether responsive materials have been withheld on the basis of asserted objections under Fed. R. Civ. P. 34(b)(2)(C); (2) the defendant's failure to provide an appropriate privilege log under Fed. R. Civ. P. 26(b)(5); (3) the defendant's failure to provide complete responses to the plaintiff's discovery requests regarding the defendant's treatment of other employees in similar circumstances; (4) the defendant's failure to provide complete responses to plaintiff's discovery regarding statistical information of other employees in the defendant's work force; (5) the defendant's failure to provide complete responses to the plaintiff's discovery regarding prior actions alleging discrimination by the defendant on the basis of age or disability; (6) the defendant's failure to provide complete responses to plaintiff's discovery regarding policies, procedures, protocols, recommendations, or order sets drafted by the

plaintiff; and (7) the defendant's failure to provide complete responses to discovery by virtue of evasive or incomplete responses. The defendant contends that it has appropriately responded to the written discovery requests served upon it.

Counsel for the parties tried to resolve the disputed discovery items, but were unable to settle all the disputed items. (Doc. 22-8; Doc. 22-9; Doc. 28; Doc. 34; Doc. 34-1). We will address each of the objections raised by the defendant in the interrogatories and requests for production of documents separately. Any interrogatory requiring an answer or a request for production of documents requiring a response by the defendant shall be made within twenty-one (21) days of the date of this memorandum.

### 1. *Interrogatories*

**Interrogatory No. 1.** The objection to Interrogatory No. 1 is overruled; however, subject to the applicability of a privilege log, which we discuss below, we find that this interrogatory has been sufficiently answered.

**Interrogatory No. 2.** The objection to Interrogatory No. 2 is overruled; however, we find that this interrogatory has been sufficiently

answered.

**Interrogatory No. 3.** The objection to Interrogatory No. 3 is overruled; however, we find that this interrogatory has been sufficiently answered.

**Interrogatory No. 4.** The objection to Interrogatory No. 4 is overruled; however, we find that this interrogatory has been sufficiently answered.

**Interrogatory No. 5.** The objection to Interrogatory No. 5 is sustained based upon the representations made by defense counsel during discussions with the court on April 9, 2020.

**Interrogatory No. 6.** The objection to Interrogatory No. 6 is overruled, and the defendant is directed to answer the interrogatory specifically with respect to the employee discipline process in place and in effect as of June 2017. To the extent that the answer to the interrogatory can specifically identify documents produced by bates label, the defendant is directed to do so.

**Interrogatory No. 7.** The objection to Interrogatory No. 7 is overruled; however, we find that this interrogatory has been sufficiently answered.

**Interrogatory No. 8.** The objection to Interrogatory No. 8 is overruled; however, we find that this interrogatory has been sufficiently answered.

**Interrogatory No. 9.** The objection to Interrogatory No. 9 is overruled; however, we find that this interrogatory has been sufficiently answered.

**Interrogatory No. 10.** At the telephonic conference of April 9, 2020, counsel for the plaintiff proposed to limit this interrogatory for a period of five years—July 2015 through July 2020 and limit the "employees" to "registered nurses," while the court suggested a more defined scope of conduct. Therefore, the objection to Interrogatory No. 10 is overruled, and the defendant is directed to respond to Interrogatory No. 10, amended as follows: *"Identify by full name, address and title/positions all current and former registered nurses who were investigated, accused, disciplined, or discharged for a violation of medical chart entries in any format from July 2015 through July 2020."* If none of the defendant's registered nurses have been investigated, accused, disciplined, or discharged for a medical chart entry, the defendant shall so state.

**Interrogatory No. 11.** For the same reasons as set forth above with respect to Interrogatory No. 10, the objection to Interrogatory No. 11 is overruled and the defendant is directed to answer the question in the same format as Interrogatory No. 10, as amended, for the same period—July 2015 through July 2020. If none of the defendant's employees have been investigated, accused, disciplined, or discharged for a medical chart entry, the defendant shall so state.

**Interrogatory No. 12.** The objection to Interrogatory No. 12 is sustained. During our telephonic discussions with counsel on April 9, 2020, the court observed that this interrogatory appeared to have been appropriately answered in that it refers to bates-labeled documents as part of its answer.

**Interrogatory No. 13.** The objection to Interrogatory No. 13 is overruled. This interrogatory limits the time frame to an eight-month period. The defendant is directed to respond to the question as drafted.

**Interrogatory No. 14.** The objection to Interrogatory No. 14 is overruled; however, subject to the applicability of a privilege log, which we discuss below, we find that this interrogatory has been sufficiently answered in that the defendant has responded that the documents

produced in response to request for production of documents No. 7 is responsive to this interrogatory.

**Interrogatory No. 15.** The objection to Interrogatory No. 15 is overruled; however, subject the applicability of a privilege log, which we discuss below, we find that this interrogatory has been sufficiently answered to the extent that the defendant has responded that responses to Interrogatories Nos. 2 and 4 and documents previously produced with bates labels SHC 0001 to SHC 0963, including but not limited to SHC 0953 to SHC 0963, are responsive to this interrogatory.

**Interrogatory No. 16.** The objection to Interrogatory No. 16 is overruled.[2] To the extent that the defendant's Rule 26 disclosures do not contain all the names, addresses, and telephone numbers of the persons who are believed to have information regarding the facts and legal claims alleged in the complaint and the answer to the complaint, the defendant is directed to provide that information to the plaintiff.

**Interrogatory No. 17.** The objection to Interrogatory No. 17 is

---

[2] With respect to the defendant's objection that responsive information may be protected by attorney-client privilege or the work product doctrine, see *United States ex rel. Krahling v. Merck & Co.*, No. 10-4374 (CDJ), 2015 WL 12826470, at *1 n.2 (E.D. Pa. July 31, 2015).

overruled. However, the defendant shall answer the questions in this interrogatory limited to lawsuits/actions involving allegations of age discrimination and disability discrimination over the four-year period from November 2015 through November 2019.

**Interrogatory No. 18**. The objection to Interrogatory No. 18 is overruled. The defendant shall answer this interrogatory and it may reserve the right to timely supplement its answer to identify such other witnesses whom it later decides to call to testify at trial in accordance with the federal rules, the local rules of this district court, and any order of court.

**Interrogatory No. 19.** The objection to Interrogatory No. 19 is sustained; however, subject to the applicability of a privilege log, which we discuss below, we find that this interrogatory has been sufficiently answered.

**Interrogatory No. 20.** The objection to Interrogatory No. 20 is sustained. The subject action is an age and disability discrimination case. The information sought in Interrogatory No. 20 relates broadly to registered nurses throughout a hospital who have been hired, promoted, or who independently contracted with the defendant, with no link to the

plaintiff, the position at issue, or any condition or circumstance at issue in this case. In addition, the defendant responded with the name of the individual who replaced the plaintiff as inpatient wound care nurse. (Doc. 29, at 3).

**Interrogatory No. 21.** The objection to Interrogatory No. 21 is sustained based upon the representations to the court in defense counsel's letter dated April 8, 2020 (Doc. 29, at 3), and the oral representations made by defense counsel in the telephonic discussion of April 9, 2020, that the defendant will produce the file of Theresa Valent, McDonough's replacement. To the extent that the file of Theresa Valent has not yet been produced, the defendant is directed to do so.

## 2. *Requests for Production of Documents*

**RFP No. 3.** The objection to RFP No. 3 is overruled. The defendant is directed to respond to the request limited to positions held by "registered nurses" only and for the period November 2016 through November 2019. (Doc. 34-1, at 2-3).

**RFP No. 4.** The objection to RFP No. 4, as that request has been modified by the plaintiff and the court, is overruled.[3] The defendant is

---

[3] *See* Interrogatory No. 10 *supra.*

directed to produce the complete personnel file, excluding information as to employee benefits, compensation, and personal identifying information (*e.g.* complete dates of births, social security numbers, account numbers, *etc.*) for each employee identified in response to Interrogatory No. 10 as modified above by the plaintiff and the court.

**RFP No. 5.** The objection to RFP No. 5, as modified by the plaintiff (Doc. 28) and proposed by the defendant (Doc. 34-1, at 3), is overruled. The defendant is directed to produce a list of all registered nurses employed during the time period November 1, 2016 through November 1, 2019 that shows the registered nurse's name, year of birth, date of hire, date of termination (if any) and reason for termination (if any).

**RFP No. 6.** The objection to RFP No. 6 is overruled; however, subject to the applicability of a privilege log, which we discuss below, we find that the response to this RFP is sufficient.

**RFP No. 7**. The objection to RFP No. 7 is sustained; however, subject to the applicability of a privilege log, which we discuss below, we find that the response to this RFP contained in the response and in defense counsel's letter to plaintiff's counsel (Doc. 34-1, 3-4) is sufficient. Nevertheless, in order to have a complete and appropriate response, the

defendant is directed to provide its full and complete response as reflected in its letter to plaintiff's counsel as recited therein.

**RFP No. 8.** The objection to RFP No. 8 is sustained; however, we find that the response to this RFP is sufficient in that the defendant has previously produced bates-labeled documents SHC 0001 to SHC 0963 and additional documents produced in response to the request for production of documents,

**RFP No. 9.** The objection to RFP No. 9 is overruled. The defendant is directed to respond to this RFP.

**RFP No. 10.** The objection to RFP No. 10 is overruled. The defendant is directed to respond to this RFP.

**RFP No. 11.** The objection to RFP No. 11 is overruled. The defendant shall respond whether any responsive documents exist.

**RFP No. 12.** The objection to RFP No. 12 is sustained; however, subject to the applicability of a privilege log, which we discuss below, we find that the response to this RFP is sufficient.

**RFP No. 13.** The objection to RFP No. 13 is overruled. Consistent with our directive during the April 9, 2020, telephone conference, the defendant shall produce all non-privileged documents, if any for the

period July 2015 to the present, containing employee discipline issued to those employees identified in response to Interrogatory No. 10, as amended. Any privileged documents are subject to the privilege log which we discuss below.

**RFP No. 14.** The objection to RFP No. 14, as modified by the plaintiff (Doc. 28), is overruled. Consistent with our directive during the April 9, 2020, telephone conference, the defendant is directed to provide a copy of any complaints or charges filed with the EEOC or PHRC or complaints filed with any court alleging age or disability discrimination for the period November 2015 through November 2019.

**RFP No. 15.** The objection to RFP No. 15 is sustained. However, the plaintiff may, if she chooses, file a subsequent motion to seek the discovery of settlement agreements as they relate to age, and disability discrimination provided such motion contains a heightened and more particularized showing of relevance. *Lesal Interiors v. Resolution Tr. Corp.*, 153 F.R.D. 552 (D.N.J. 1994); *Chappelle v. Varano*, No. 4:11-cv-304, 2012 WL 3241503 (M.D. Pa. Aug. 7, 2012).

**RFP No. 16.** The objection to RFP No. 16 is overruled; however, subject to the applicability of a privilege log, which we discuss below, we

find that the response to this RFP is sufficient.

**RFP No. 17.** The objection to RFP No. 17 is sustained; however, subject to the applicability of a privilege log, which we discuss below, we find that the response to this RFP is sufficient.

**RFP No. 18.** The objection to RFP No. 18 is overruled. Despite the defendant's response that it produced bates-labeled documents SHC 0001 to SHC 0963, it shall identify which documents contained therein are responsive to the request set forth in RFP No. 18. Further, if none of those documents are responsive to RFP No. 18, the defendant shall identify which documents, if any, are responsive as more fully described and identified in defense counsel's letter to plaintiff's counsel (Doc. 34-1, at 5).

**RFP Nos. 19-23.** The plaintiff has no specific objection with respect to RFP Nos. 19-23 other than to state that the defendant has asserted numerous and repetitive objections based on the attorney-client privilege but failed to produce an applicable privilege log supporting non-disclosure of responsive documents and information. (Doc. 22 ¶ 43). We discuss the applicable attorney-client privilege below and the necessity of a privilege log below.

### 3. Attorney-client privilege

Rule 26(b)(1) provides generally that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The party claiming a privilege has the burden of establishing that a privilege applies. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). The burden rests upon the party who claims that requested documents are privileged to "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Here, the defendant has asserted numerous objections based on the attorney-client privilege. (Interrogatory Nos. 1, 10, 11, 13-16, 18, and 19, and RFP Nos. 1, 3, 4-8, 10, 13-21, and 23). (Doc. 22 ¶¶ 42-44). The defendant argues that it is not required to produce a privilege log because "such an undertaking would be enormous, is unreasonably burdensome and intended to be harassing and vexatious and would unnecessarily expand the scope and cost of the litigation." (Doc. 29, at 4). Further, defense counsel maintains that they informed plaintiff's counsel that any privilege protections are related to consultations with trial counsel or

relating to conversations with defense counsel's office. (*Id.* at 3). We agree with the defendant that there is no requirement that a privilege log be created for privileged documents generated after the filing of the complaint. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d. 119, 139 n.22 (3d Cir. 2009). But we are unable to determine whether the asserted attorney-client privilege applies to documents generated prior to the filing of the complaint. *See Northwood Nursing & Convalescent Home, Inc.*, 161 F.R.D. 293, 299 (E.D. Pa. 1995). Therefore, we will direct the defendant to provide a privilege log to plaintiff's counsel describing the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the plaintiff to assess the claim of privilege or protection from disclosure.

### b. *Extension of Case Management Deadlines.*

In her motion, McDonough requests that we extend the case management deadlines. Discovery was scheduled to conclude on April 1, 2020. Therefore, we will extend the case management deadlines consistent with Judge Jones's 2021 court calendar.

Subject to the availability of Judge Jones, and considering the

delays attributed to the COVID-19 global pandemic, this case shall be placed on Judge Jones's March 2021 trial calendar with the following deadlines:

    a.  Discovery deadline: September 30, 2020;

    b.  Dispositive motion deadline: November 2, 2020;

    c.  Final pre-trial conference: February 1, 2021; and

    d.  Jury selection to commence on March 2, 2021.

Judge Jones, of course, may adjust these deadlines based upon his availability, his current court calendar, and any extended delays brought about by the pandemic.

    An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 8, 2020